UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **TYRON TRAMON BATES** | **CIVIL ACTION NO. 25-0765** |
| | |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| | |
| **WARDEN NOLAN BASS, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Tyron Tramon Bates, a prisoner at Tensas Parish Detention Center ("TPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately June 2, 2025, under 42 U.S.C. § 1983.  He names the following Defendants: Warden Nolan Bass and Sheriff Robert L. Rushing.[1]  For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff states that a physician prescribed him cholesterol medication to "keep [his] blood pressure down."  [doc. # 1, p. 3].  Plaintiff arrived at TPDC in April 2023.  *Id.*  He claims that despite a physician at "Ochsner in Monroe" thrice asking TPDC to give Plaintiff his cholesterol medication, Plaintiff had to wait until July 2024, to receive it.  *Id.*  He maintains that because of the delay in receiving the medication, he experienced high blood pressure and elevated cholesterol, he "almost got diabetes," and he had cramping pains in his heart for which he was twice placed on a heart monitor.  *Id.*

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Next, Plaintiff states that in April 2024, a dentist diagnosed him with infected gums and prescribed him antibiotics and mouthwash. [doc. # 1, p. 4]. Plaintiff did not receive the mouthwash. *Id.* In October 2024, he returned to the dentist with the same problem, and the dentist allegedly told him that his problem "was due to never receiving" the mouthwash. *Id.* Plaintiff claims that he had to wait until April 2, 2025, to finally receive the mouthwash. *Id.*

Plaintiff next claims that as of the filing of his initial pleading—approximately June 2, 2025—he had not received his prescribed diabetic meals and snacks. [doc. # 1, p. 4]. In an amended pleading, he alleges that as of June 18, 2025, he has still not received his prescribed meals and snacks. [doc. # 5, p. 7].

Finally, Plaintiff claims that "there are drugs all over the compound because the guards bring them in." [doc. # 1, p. 6]. He adds that "there is drug use and violence with knives" every day and in every dormitory. *Id.* He fears for his life. *Id.*

For relief, Plaintiff seeks compensation and a transfer to another facility. [doc. # 1, pp. 6, 7].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual

3

allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Duplicative Claims**

The Court should dismiss Plaintiff's failure-to-protect claims and claims concerning his exposure to drugs and smoke because they are duplicative and therefore legally frivolous and malicious.

"IFP complaints may be dismissed as frivolous pursuant to § 1915(d) when they seek to relitigate claims which allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the IFP plaintiff." *Wilson v. Lynaugh*, 878 F.2d 846, 850 (5th Cir. 1989). Likewise, a case is duplicative if it involves "the same series of events" and allegations of "many of the same facts as an earlier suit." *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988). Moreover, "it is malicious for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff." *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) (internal quotation marks omitted); *see Lewis v. Sec'y of Pub. Safety & Corr.*, 508 F. App'x 341, 344 (5th Cir. 2013); *Bailey*, 846 F.2d at 1021 ("[A]n IFP complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under . . . section 1915(d)."). District courts are "'vested with especially broad discretion' in determining whether such a dismissal is warranted." *Bailey*, 846 F.2d at 1021.

Here, Plaintiff's failure-to-protect claims, as well as his claims that he is exposed to smoke and drugs, are substantially similar to, and arise from the same series of events as, claims and allegations in a proceeding that he filed before filing the instant lawsuit: *Tyron Tramon Bates v. Nolan Bass*, 3:25-cv-0764 (W.D. La. June 2, 2025). There, the undersigned summarized some of Plaintiff's allegations thusly:

> Plaintiff claims in his amended pleading that "[b]ecause the facility failed to keep knives and weapons out of the dorms, [he] was stabbed in October 2023"

and had to be "rushed to the hospital with serious injuries." [doc. # 5, p. 3].

Plaintiff alleges that there is "violence with knives" every day and in every dormitory. [doc. # 1, p. 6]. Twenty-four inmates have been "stabbed at this facility in the past 25 days as of June 20, 2025." [doc. # 5, p. 3]. He claims that Warden Bass "has not installed safety protocols such as daily searches or shake downs." Id. at 5. "If he would do so," Plaintiff alleges, "it would cut down substantially on the drugs and weapons." *Id.*

Plaintiff recounts that on June 18, 2025,2 one inmate stabbed another in the face. [doc. # 5, p. 1]. Two weeks before that, two other inmates "were fighting with weapons as long as a lawn mower blade." *Id.* Plaintiff claims that after these incidents, Warden Bass did not perform a "shake down to find any weapons." *Id*. at 1-2. Plaintiff then alleges that 2-3 weeks before the latter incident listed above, one inmate stabbed another in the back with a knife. *Id*. at 2. He states that the attacking inmate "did not get another charge and was back in the dorm 2-3 weeks later as if nothing happened." *Id*. "A search was done immediately after that incident, but they did not do a thorough job," according to Plaintiff. *Id.* He adds: "There is a 14 inch or longer piece of metal pipe that inmates are passing around for people to use in the dorm as I write this. Knives get sharpened on the floor daily. Obviously Nolan Bass is not doing his job and allowing weapons and knives to remain in the jail." *Id*. He likewise claims that Sheriff Rushing "has not taken any initiative in doing any kind of serious search himself to find weapons." *Id*.

Plaintiff alleges that "there are drugs all over the compound because the guards bring them in." [doc. # 1, p. 6]. He adds that there is drug use every day and in every dormitory. *Id*. He claims that Captain Smith is "fully aware of the drug situation here" and that he has "personally seen [Smith] make fun of inmates that are high and getting them to dance. [sic]." [doc. # 5, p. 1]. Plaintiff alleges that Smith failed to discipline inmates who are high and passed out on the floor. Id. Smith allegedly "tolerates drugs way too much." *Id*. "Because drugs are all over the place, [Plaintiff] is constantly breathing the smoke and chemicals in . . . ." *Id*. at 3. He suggests that his one hour each month of time outside does not provide him enough fresh air to ameliorate the effects of the smoke. *Id.*

*Id.* at Doc. 6. On July 17, 2025, the undersigned recommended dismissing the aforementioned claims.

As Plaintiff's failure-to-protect claims and claims concerning his exposure to drugs and smoke in the instant proceeding are duplicative, the Court should dismiss them without prejudice to Plaintiff's right to litigate the claims in the earlier-filed proceeding but otherwise with

6

prejudice.[3] *See Adele v. Rogers*, 669 F. App'x 264 (5th Cir. 2016).

**3. Supervisory Liability**

As above, Plaintiff names Warden Nolan Bass and Sheriff Robert L. Rushing as Defendants. He states that Bass was an assistant warden in 2023, and that he became warden in 2024. [doc. # 5, p. 2]. Plaintiff states that Bass is "the head" person at TPDC, that everyone reports to him, and that he knows everything that happens at the facility. *Id.* He adds:

> [Bass] failed to make sure that the medical staff did their job and make sure inmates get medicine they were prescribed. He was negligent in doing so. Because he was negligent I didn't get my cholesterol medication and also my medicated mouthwash.

*Id.* As to Sheriff Rushing, Plaintiff alleges in relevant part:

> Sheriff Robert Rushing is in charge of all of the jails in Tensas Parish. It is his job to know what is going on at the jail here. I have never seen him come into this jail. He is the head person that Nolan Bass calls when there is a problem at the jail.

*Id.*

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v.*

---

[3] That Plaintiff names a different defendant in the earlier proceeding does not change the result. *See Lewis*, 508 Fed. App'x at n.2; *Bailey*, 846 F.2d at 1021 (affirming dismissal where the "complaint repeats the same factual allegations that [the plaintiff] asserted in his earlier case, although he successively sued different defendants."); *Brown v. Louisiana*, 2010 WL 5582940, at *3 (W.D. La. Dec. 1, 2010).

*Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff does not plausibly allege that Warden Bass or Sheriff Rushing affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between the defendants' conduct and any alleged constitutional violation.[4] He does not allege, for instance that either Defendant was involved in depriving him of, or delaying, his medications, diabetic food, or other medical care. Instead, by naming Bass and Rushing as Defendants because they are, respectively, the warden and the sheriff or because they allegedly failed to ensure that staff "did their job[s]," Plaintiff pleads only vicarious liability. *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . ."); *Lott v. Edenfield*, 542 F. App'x 311, 315 (5th Cir. 2013) ("[T]he complaint suggests that Lappin and Holder were aware of the conditions because they are 'the governmental authorities charged with oversight . . . .' This is essentially a theory of respondeat superior[.]").

Plaintiff does not allege that Defendants implemented an unconstitutional policy, practice, custom, or procedure. At best, he thinly suggests that Bass failed to implement a policy, alleging without elaboration that Bass was negligent in failing to ensure that other inmates received prescribed medications. [doc. # 5, p. 2]. However, "[F]ailure to promulgate

---

[4] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

policy 'must amount to an intentional choice, not merely an unintentionally negligent oversight' . . . ." *Grant v. LeBlanc*, No. 21-30230, 2022 WL 301546, at *5 (5th Cir. Feb. 1, 2022) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)); *see Davis v. Lumpkin*, 35 F.4th 958 (5th Cir. 2022) (opining that a prisoner did not state a claim against a director of the Texas Department of Criminal Justice for deliberate indifference to serious medical needs because there was no allegation (i) that the director was involved in any treatment or failure to treat or (ii) that any alleged deliberate indifference was the result of a prison policy that could be tied to the director); *Walker v. Upshaw*, 515 F. App'x 334, 340 (5th Cir. 2013).[5]

Accordingly, the Court should dismiss Plaintiff's remaining claims against Bass and Rushing.[6]

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Tyron Tramon Bates's

---

[5] *See also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("If Sheriff Belt did not knowingly disregard Thompkins' pleas to see a doctor, he cannot be held liable unless he knew the jail's system was so deficient as to expose prisoners to substantial risk of significantly unmet serious medical needs—*i.e.,* was unconstitutional—and failed to properly attempt to correct it, *and* unless his action or inaction in this respect caused Thompkins' injuries. . . . The sole possible basis for supervisory liability identified by the district court was that '[t]here either should have been professional medical attention available on the premises on a regular basis, or speedy access to the same.' However, Thompkins adduced no evidence whatever that the jail's treatment system had ever actually failed to deliver necessary and appropriate medical care to any other inmate, or that the sheriff was otherwise actually informed or consciously believed that the policy would expose prisoners to substantial risk of significantly unmet serious medical needs, and we find in the record no substantial evidence that the jail's policy for inmate medical treatment was constitutionally defective during the time Thompkins was incarcerated there. Accordingly, we conclude that Sheriff Belt cannot be held liable on the theory that he implemented an unconstitutional policy when the record below indicates no more than that the system may have failed in the one particular instance of Thompkins' back injury.").

[6] While Plaintiff has made additional allegations in his amended complaint about his medical needs and doctor visits, the undersigned has not included every allegation because, regardless, he never alleged that either Defendant was involved in the alleged lack of healthcare or otherwise caused his lack of, or delay in, healthcare.

failure-to-protect claims and claims concerning his exposure to drugs and smoke be **DISMISSED WITHOUT PREJUDICE** to his right to prosecute the claims in his prior, pending proceeding. The claims should otherwise be **DISMISSED WITH PREJUDICE** as duplicative and legally frivolous and malicious.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED WITH PREJUDICE** as legally frivolous and for failure to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 5th day of August, 2025.

Kayla Dye McClusky
United States Magistrate Judge